# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. MITCHELL,<br><br>   Plaintiff,<br><br>   v.<br><br>D. DAVEY, et al.,<br><br>   Defendants. | Case No. 1:16-cv-01148-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS CONSISTENT WITH MAGISTRATE JUDGE'S PRIOR ORDER IN LIGHT OF <u>WILLIAMS</u> DECISION<br><br>(ECF NOS. 16 & 26)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

John E. Mitchell ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff consented to magistrate judge jurisdiction. (ECF No. 7). Defendants have not consented to magistrate judge jurisdiction.

The Court previously screened Plaintiff's complaint. (ECF No. 16). The Court found that Plaintiff stated a cognizable claim against Defendants Thompson and Robicheaux for violation of Plaintiff's free exercise rights under the First Amendment, and dismissed all other claims. (ECF Nos. 16 & 26). Prior to the Court dismissing claims, Plaintiff agreed to proceed only on the claims found cognizable by the Court (although he did object in order to preserve his appellate rights). (ECF No. 25).

As described below, in light of Ninth Circuit authority, this Court is recommending that the assigned district judge dismiss claims and defendants consistent with the order by the

magistrate judge at the screening stage.

## I.     WILLIAMS v. KING

On November 9, 2017, the United States Court of Appeals for the Ninth Circuit held that a magistrate judge lacked jurisdiction to dismiss a prisoner's case for failure to state a claim at the screening stage where the Plaintiff had consented to magistrate judge jurisdiction and defendants had not yet been served. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Specifically, the Ninth Circuit held that "28 U.S.C. § 636(c)(1) requires the consent of all plaintiffs and defendants named in the complaint—irrespective of service of process—before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Id. at 501.

Here, the defendants were not served at the time the Court issued its order dismissing claims and defendants, and therefore had not appeared or consented to magistrate judge jurisdiction. Accordingly, the magistrate judge lacked jurisdiction to dismiss claims and defendants based solely on Plaintiff's consent.

In light of the holding in Williams, this Court will recommend to the assigned district judge that he dismiss the claims and defendants previously dismissed by this Court, for the reasons provided in the Court's screening order.

## II.     SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III. SUMMARY OF PLAINTIFF'S COMPLAINT

On June 9, 2015, Plaintiff was transferred from the Substance Abuse Treatment Facility (SATF) to California State Prison, Corcoran (CSP-COR).  Prior to the transfer, Plaintiff told his counselor that he feared retaliation by officers at CSP-COR based on a civil complaint he filed that he had settled.

Upon arrival at CSP-COR, Plaintiff informed staff that he received a religious diet.  Plaintiff handed R&R staff his prison ID card with his religious diet card taped to it.  It was not returned.

On or about June 10, 2015, Plaintiff verbally requested his religious diet from Defendants and correctional officers Huewe, Vargas, Alford, Tenorio, and Medina.  He asked them to call CSP-COR kitchen to have him put on the religious diet list.  They all responded that "'it was not my Job to get you your religious diet.'"  Plaintiff could not leave his cell because he was on orientation status.  Plaintiff also states that, when he would tell the kitchen staff to ask these defendants if he was entitled to a halal diet, they would say "'no I.d., no halal diet.'"

On June 11, 2015, Plaintiff sent an inmate request to the warden requesting to be put on the religious diet list.  That request was forwarded to the Community Resource Manager, Defendant M. Robicheaux.  On July 11, 2015, Defendant Robicheaux responded "your [sic] on

the list." Thereafter Plaintiff informed his mental health clinician Dr. Shivers, who faxed Defendant Robicheaux about Plaintiff not receiving his religious diet.

Plaintiff filed a grievance on June 14, 2015. Plaintiff sent a CDCR 22 request to Defendant Robicheaux prior to the start of Ramadan. On July 7, 2015, Defendant Robicheaux responded "nothing could be found in your C-File so I'm enclosing a 30/30 diet form."

On July 5, 2015, Plaintiff sent a CDCR 22 inmate request form to his counselor CCI Combs, who accessed his central file and gave him a copy of his already approved 30/30 diet contract, which was renewed on or about May 10, 2014.

On July 8, 2015, Plaintiff sent a CDC 22 inmate request form to C/O Robles and C.S.C. Lively in the kitchen, who responded that Plaintiff had been on the RMA list since July 8, 2015, and that an updated list had been given to staff in the 3b-05 building where he was housed on July 10, 2015.

On July 15, 2015, Plaintiff received a halal religious diet meal.

On or about July 22, 2015, Plaintiff met with Defendant Robicheaux, who accepted fault for not providing Plaintiff his religious diet. Ramadan was over by this time.

On or about August 24, 2015, Defendant Lieutenant Thompson took Plaintiff's CDC ID card and religious diet card at meal time and never returned them. When Plaintiff asked for them back, Defendant Thompson said he did not have them. Plaintiff was not given a religious diet because he lacked an ID card.

On both August 26, 2015, and September 15, 2015, Plaintiff sent a CDC 22 requesting another religious ID card. Plaintiff received no response to the request he made on August 26, 2015. Even though Defendants Huewe, Vargas, and Tenorio knew Plaintiff was approved to receive halal meals, they would not allow him to receive one.

On October 19, 2015, Plaintiff sent a CDC 22 form to Defendant Robicheaux requesting a religious diet ID card. He received the card that same day.

On or about November 16, Plaintiff's ID card and religious diet card were not returned to him after he left the law library. Upon information and belief, LTA Carmichael sent the ID back to 3b-04 and gave it to Defendant correctional officer Baeza, who never returned it to

4

Plaintiff.

Additionally, CSP-COR violates the purity in the way the food is served. Meats are served cold, and halal meals are often not provided because of supply, so Plaintiff has to eat a non-halal diet or nothing at all. During Ramadan in 2016, Plaintiff's name was again not on the list to receive a halal diet at dinner with the rest of the Muslim inmates who received dinner at sunset.

Defendant Robicheaux was the Community Resource Manager responsible for most of the religious diet requests and programs at both SATF and CSP-COR at the time Plaintiff's religious rights were previously violated. At one point, Defendant Robicheaux wrote to Plaintiff that "nothing could be located in your c-file so I'm enclosing a 30/30 diet form." However, Plaintiff's counselor had already sent him a copy of his approved diet agreement from his central file.

## IV. <u>ANALYSIS OF FIRST AMENDMENT CLAIM FOR FAILURE TO PROVIDE RELIGIOUS MEALS</u>

"Inmates retain the protections afforded by the First Amendment, 'including its directive that no law shall prohibit the free exercise of religion.'" <u>Shakur v. Schriro</u>, 514 F.3d 878, 883–84 (9th Cir. 2008) (quoting <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987)). To implicate the Free Exercise Clause, a prisoner must show that the belief at issue is both "sincerely held" and "rooted in religious belief." <u>Malik v. Brown</u>, 16 F.3d 330, 333 (9th Cir. 1994); <u>see</u> <u>Shakur</u>, 514 F.3d 884–85 (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in <u>Malik</u> determines whether the Free Exercise Clause applies). If the inmate makes his initial showing of a sincerely held religious belief, he must establish that prison officials substantially burden the practice of his religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith. <u>Shakur</u>, 514 F.3d at 884–85.

A regulation or policy that burdens the First Amendment right to free exercise may be upheld only if it is reasonably related to a legitimate penological interest. <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). This determination requires analysis of four factors: (1) there must be a

valid, rational connection between the regulation and the legitimate governmental interest; (2) whether there are alternative means of exercising the right that remain open to inmates; (3) the impact that accommodation of the right will have on guards, other inmates, and the allocation of prison resources; and (4) the absence of ready alternatives. Id. at 89-90.

Here, Plaintiff has alleged that his exercise of religion was infringed at CSP-COR for certain parts of 2015, including Ramadan, because he could not obtain meals consistent with the religion of Islam. He also alleges that CSP-COR often does not have such meals available, and they do not meet Muslim standards. He alleges that his beliefs are sincerely held and religious in nature.

The Court finds that Plaintiff has alleged that his religious rights were infringed. The more difficult question is who is to blame for this violation of constitutional rights. On a number of occasions, it appears that prison officials took or lost his religious diet card, and that as a result, prison officials refused to provide him with religious meals. Sometimes Plaintiff names the official who took his religious diet card, and sometimes they are not known. To the extent someone at the prison took his religious diet card, Plaintiff states a claim against them. For this reason, Plaintiff states a claim against Defendant Thompson. If Plaintiff chooses to request leave to amend his complaint to name the other prison officials who took his prison diet card(s), it is possible that Plaintiff has a claim against them as well.

Plaintiff also states a claim against Defendant Robicheaux because it is alleged that she was in charge of providing such meals, and also that she knowingly ignored information in Plaintiff's central file in order to withhold such meals from Plaintiff.

Although Plaintiff alleges that certain correctional officers also withheld religious meals from Plaintiff, it appears to be on the basis that Plaintiff lacked the necessary documentation. Compliance with documentation rules alone does not appear to violate Plaintiff's constitutional rights. Put another way, the prison has a legitimate government interest in not providing Plaintiff a religious meal if Plaintiff lacks adequate documentation.

The Court does not find sufficient allegations against any other defendant for denial of Plaintiff's free exercise rights under the First Amendment.

The Court also does not find a claim based on the content of the religious meals. Plaintiff asserts at the end of his factual summary that when his religious meals are served, they are served in a way that violates the purity of the food served. While if true, this could establish a claim, Plaintiff's factual allegations about the availability and content of the meals is insufficient and largely conclusory. They are insufficient for the Court to find that CSP-COR's provision of religious Muslim meals generally violated Plaintiff's First Amendment rights. Moreover, Plaintiff does not allege who is responsible for providing such meals in order to assess liability against a specific defendant.

## V. EVALUATION OF PLAINTIFF'S RETATLIATION CLAIM

Allegations of retaliation against a prisoner for exercising his First Amendment rights may support a section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); accord Watson v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff alleges that Defendants violated his religious rights because of a settlement in a case against certain defendants, which occurred before these events. The Court finds that Plaintiff has not alleged sufficient facts to establish a cause of action for retaliation. Although the settlement occurred before the conduct occurred, there is insufficient facts that would establish that defendants were acting in order to retaliate, such as something they said or did that would allow an inference to be drawn that their conduct was related to the settlement. Moreover, there is insufficient information about which defendants were part of, or knew about, the earlier settlement.

///

## VI. CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that all claims and defendants be DISMISSED, except for Plaintiff's claim against Defendants Thompson and Robicheaux for violation of Plaintiff's free exercise rights under the First Amendment.[1]

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 2, 2018**         /s/ Erica P. Grosjean
                                  UNITED STATES MAGISTRATE JUDGE

---

[1] The Court gave Plaintiff leave to amend when it initially screened Plaintiff's complaint. (ECF No. 16). While Plaintiff did object to preserve his appellate rights, he also opted to proceed on the claim found cognizable by the Court instead of filing an amended complaint. (ECF No. 25).