UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN E. MITCHELL,<br><br>       Plaintiff,<br><br>  v.<br><br>CRM M.S. ROBICHEAUX,<br><br>       Defendant. | Case No. 1:16-cv-01148-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BE GRANTED AND THAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(ECF NOS. 128 & 130)<br><br>FINDINGS AND RECOMMENDATIONS ON MISCELLANEOUS MOTIONS<br><br>(ECF NOS. 112, 135, 136, 141, 143, 147, & 148)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS<br><br>ORDER DENYING DEFENDANT'S REQUEST FOR RULING AS MOOT AND REQUIRING DEFENDANT TO SERVE PLAINTIFF WITH A COPY OF HER RESPONSES TO PLAINTIFF'S DISCOVERY REQUESTS<br><br>(ECF NO. 149) |

John E. Mitchell ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case now proceeds on Plaintiff's original complaint, which was filed on August 5, 2016. (ECF No. 1). This case is proceeding on Plaintiff's claim against defendant Robicheaux ("Defendant") for violation of Plaintiff's First Amendment free exercise rights. (ECF Nos. 26 & 93).

On August 22, 2019, Plaintiff moved for summary judgment on his claim against

Defendant. (ECF No. 128). On September 12, 2019, Defendant filed her opposition to the motion. (ECF No. 133). On October 10, 2019, Plaintiff filed his reply. (ECF No. 139).

On August 23, 2019, Defendant moved for summary judgment. (ECF No. 130). On September 9, 2019, Plaintiff filed his opposition to the motion. (ECF No. 132). On September 16, 2019, Defendant filed her reply. (ECF No. 134). On February 12, 2020, Defendant filed a request for ruling on her motion for summary judgment. (ECF No. 149).[1]

The motions for summary judgment are now before the Court. Also before the Court are: Plaintiff's motion for a stay of proceedings/injunctive order (ECF No. 135); Plaintiff's motion under the All Writs Act (ECF No. 136); Plaintiff's motion for court order and/or intervention (ECF No. 141); Plaintiff's motion for a preliminary injunction/TRO (ECF No. 143); Plaintiff's motion for a temporary restraining order and preliminary injunction (ECF No. 147); and Plaintiff's motions for leave to submit a supplemental civil complaint pursuant to Federal Rule of Civil Procedure 15(d) (ECF Nos. 112 & 148).

For the reasons that follow, the Court will recommend that Plaintiff's motion for summary judgment be granted as to liability, with the amount of damages to be determined at trial.[2]

The Court will also recommend that all of Plaintiff's other pending motions, as well as Defendant's motion for summary judgment, be denied.

## I.     BACKGROUND

### a.     Summary of Plaintiff's Complaint

On June 9, 2015, Plaintiff was transferred from the Substance Abuse Treatment Facility (SATF) to California State Prison, Corcoran (CSP-COR). At CSP-COR, Plaintiff's First Amendment free exercise rights were infringed, because during Ramadan he could not obtain meals consistent with the religion of Islam. Defendant was in charge of providing such meals.

---

[1] As the Court is issuing findings and recommendations on Defendant's motion for summary judgment, Defendant's request for ruling will be denied as moot.

[2] The Court is hopeful that damages may be resolved by mutual agreement, potentially with the benefit of a settlement conference, rather than proceeding to trial. The Court will therefore also recommend that the parties be ordered to confer about damages and to submit a status report fourteen days after the district judge rules on these findings and recommendations.

However, she knowingly ignored information in Plaintiff's C-File in order to withhold such meals from Plaintiff.

### b. Surviving Claim

This case is now proceeding only on Plaintiff's claim against Defendant for violation of Plaintiff's First Amendment free exercise rights. (ECF Nos. 26 & 93).

## II. MOTIONS FOR SUMMARY JUDGMENT

### a. Legal Standards

#### i. *Summary Judgment*

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255. Moreover, the Court must liberally construe Plaintiff's filings because he is a prisoner proceeding *pro se* in this action. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010).

In reviewing a summary judgment motion, the Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

ii.  *First Amendment Right to Free Exercise of Religion*

"The First Amendment, applicable to state action by incorporation through the Fourteenth Amendment, prohibits government from making a law prohibiting the free exercise [of religion]. The Supreme Court has repeatedly held that prisoners retain the protections of the First Amendment. A prisoner's right to freely exercise his religion, however, is limited by institutional objectives and by the loss of freedom concomitant with incarceration." Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1122 (9th Cir. 2013) (alteration in original) (citations and internal quotation marks omitted). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" Jones v. Williams, 791 F.3d 1023, 1032 (9th Cir. 2015) (quoting O'Lone v. Estate of

4

Shabazz, 482 U.S. 342, 349 (1987)).  "The challenged conduct 'is valid if it is reasonably related to legitimate penological interests.'"  Id. (quoting O'Lone, 482 U.S. at 349).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria.  First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity.  Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns."  Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (alteration in original) (citations and internal quotation marks omitted), supplemented, 65 F.3d 148 (9th Cir. 1995); see also Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008) (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in Malik determines whether the Free Exercise Clause applies).

Additionally, "[a] person asserting a free exercise claim must show that the government action in question substantially burdens the person's practice of her religion."  Jones, 791 F.3d at 1031.  "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs."  Id. at 1031–32 (alterations in original) (citation and internal quotation marks omitted).

   b.  Plaintiff's Position

Plaintiff moves for summary judgment.[3]  (ECF No. 128).

Plaintiff alleges that he is a Muslim inmate, and has a documented history of being a Muslim inmate.  (Id. at 3).  His belief is sincerely held and rooted in religious belief that a Muslim must eat meat that is slaughtered in the name of God and/or prepared by another Muslim who pronounces the name of God over the food.  (Id. at 3–4).  In addition, a Muslim

---

[3] In addition to moving for summary judgment on his claim against Defendant for violation of his First Amendment free exercise rights, Plaintiff also purports to move for summary judgment on a retaliation claim against Defendant.  (ECF No. 128, p. 1).  However, Plaintiff's retaliation claim against Defendant has been dismissed.  (ECF Nos. 86 & 93).  Accordingly, the Court will not address Plaintiff's arguments regarding the retaliation claim.

must fast in the Holy Month of Ramadan. (Id. at 4). Plaintiff's practice of Islam over the years has convinced him that eating halal meat/foods during the "breakFest" heightens the believer's religious experience. (Id.).

Plaintiff alleges that his religious diet was not provided during the month of Ramadan. (Id. at 3). Defendant provided no justification for the delay. (Id.). She "acted deliberately and was indifferent in her conscious act[s] of delaying the religious diet until Ramadan was over. These were not mere negligent acts." (Id. at 5) (alteration in original). She took the adverse action of withholding his religious diet from him for all of Ramadan because he filed 602s and civil complaints against Defendant and other California Department of Corrections and Rehabilitation ("CDCR") employees. (Id. at 5).

Plaintiff argues that the evidence clearly shows that Defendant burdened the practice of his religion without any justification related to legitimate penological interests. (Id. at 3). Defendant intentionally delayed responses and ignored legal notices. (Id.). Her conduct created more than an inconvenience to his religious practice. (Id.).

The burden on the exercise of Plaintiff's religion was substantial, because it pressured him to modify his behavior. (Id. at 4). Plaintiff had to eat non-halal foods, and felt as if he should abandon the Fast altogether while housed at CSP-COR. (Id.). These modifications violated Plaintiff's sincerely held religious beliefs. (Id.)

Additionally, the burden was more than an inconvenience. (Id.). It was not temporary or short in duration, and it was not resolved quickly once the problem was called to Defendant's attention. (Id.).

  c. <u>Defendant's Position</u>

Defendant also moves for summary judgment. (ECF No. 130). First, Defendant argues that she did not violate Plaintiff's First Amendment rights because she followed legitimate prison policy. (Id. at 5–6). "In accordance with prison policy, Robicheaux attempted to confirm that Mitchell was authorized to receive a religious meal. That Mitchell had already received a diet card at another institution at which he had been housed previously did not undermine the propriety of Robicheaux confirming Mitchell's religious affiliation again at

CSP-COR — especially since Mitchell admits that he did not provide a copy of the prior 3030 diet request form or diet card to Robicheaux." (Id. at 6).

"Requiring an inmate to complete an application in order to receive a religious meal is constitutional. When Robicheaux was unable to confirm prior approval of a religious diet in Mitchell's C-File, on July 8, 2015, Robicheaux provided Mitchell with another 3030 diet form to complete. Giving a prisoner a form and asking him to sign it, which is what Robicheaux did, is *de minimis*. It is not unreasonable and does not substantially burden a prisoner's free religious exercise, so as to burden his rights under the First Amendment. Mitchell returned the 3030 diet form with his 602 appeal on July 12, 2015. On July 15, 2015, he received his first 'official' Halal meal although he had been receiving them on occasion before that date." (Id. at 6–7) (citations omitted).

Second, Defendant argues that a brief delay in providing a religious diet is not unconstitutional. "Robicheaux did not <u>deny</u> Mitchell's request for Halal meals. The undisputed record shows that Mitchell was approved for placement in the religious diet program. That the process took time does not subject Robicheaux to liability. Plaintiff cannot show that Robicheaux engaged in any conduct that prohibited or substantially burdened Plaintiff's exercise of his religious beliefs." (Id. at 7).

"While the record shows that there was some delay in Mitchell's receipt of Halal (RMA) meals, he has not alleged facts sufficient to constitute a constitutional violation because Robicheaux's delay in issuing the diet card was brief, no matter whether the delay is measured from the first Form 22 (June 16, 2015) or the response from Robicheaux on July 7, 2015." (Id.).

Third, Defendant argues that "Plaintiff must assert more than negligence to state a valid § 1983 claim for the violation of his Free Exercise rights. Instead, Plaintiff must prove conscious or intentional acts that burden his free exercise of religion." (Id.). In this case, "[a]t most, Mitchell contends that Robicheaux negligently responded to his request concerning a religious diet by failing to find confirmation of approval by the previous institution and/or directing him to re-submit the 3030 diet form." (Id.). Thus, Plaintiff's claim fails.

Finally, Defendant argues that she is entitled to qualified immunity. "A short delay in approval of a religious diet request does not constitute a constitutional violation. Mere negligence does not support a claim under § 1983. Thus, no constitutional rights were violated and Defendant is entitled to qualified immunity." (ECF No. 130, p. 8).

"Robicheaux reasonably understood that the prison had a legitimate interest in requiring Mitchell to provide proper documentation for his religious diet request, whether by proof of prior approval or by filling out another 3030 form, and that compliance with that policy did not violate Mitchell's right to freely exercise his religion. Thus, Defendant is entitled to qualified immunity." (Id. at 8–9)

d. Evidentiary Objections

Defendant has made objections to Plaintiff's evidence, which the Court has reviewed. To the extent the Court necessarily relied on evidence that has been objected to, the Court relied only on evidence it considered to be admissible. The Court does not generally rule on all evidentiary objections individually in the context of summary judgment. "This is especially true when, as here, 'many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence.'" Capital Records, LLC v. BlueBeat, Inc., 765 F.Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010) (quoting Doe v. Starbucks, Inc., 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009)).

e. Analysis

The Court notes at the outset that Defendant did not submit a declaration from Defendant or any other witness, either in support of her motion for summary judgment or in opposition to Plaintiff's motion for summary judgment. This failure to provide any evidentiary support for many of the assertions in Defendant's papers was quite notable. The Court undertook a very detailed effort to determine what facts have been supported by admissible evidence in these motions, and summarizes those facts below. Again, however, Defendant failed to submit any declaration or other admissible evidence about why she acted or failed to act in response to Plaintiff's repeated requests. The only admissible evidence comes from Plaintiff's submissions, as well as Plaintiff's deposition testimony, Plaintiff's 602 request, and

Plaintiff's letter to Warden Davey.

i. *Undisputed Facts*

The Court takes judicial notice of the fact that Ramadan began on or about June 18, 2015, and ended on or about July 16, 2015. Fed. R. Evid. 201(b).

It is undisputed that Plaintiff was transferred to CSP-COR from SATF on June 9, 2015. Defendant's Separate Statement of Undisputed Fact ("DSSUF") 2. On June 11, 2015, Plaintiff wrote to the Warden stating that he was a Muslim and that he wanted his religious diet transferred to him. DSSUF 3. On June 16, 2015, Plaintiff sent a CDCR 22 Form to Defendant, seeking her assistance in receiving his religious diet. DSSUF 4. On or about July 7, 2015, Defendant responded, stating that "[n]othing could be located in your C-File so I'm enclosing a 3030 diet form," which is the form used to request a religious diet. DSSUF 5; ECF No. 130-5, p. 31.[4] Despite Defendant's assertion, Plaintiff's C-File did contain an approved 3030 diet form, which Plaintiff received a copy of on or about July 5, 2015. See DSSUF 6; ECF No. 132, p. 7. "On July 11, 2015, Robicheaux responded 'you are on the list' to the note that Mitchell had written to the Warden. Mitchell understood that to mean he was on the Ramadan list and the religious diet list." DSSUF 7. On July 15, 2015, Plaintiff received a Halal meal.[5] DSSUF 9; ECF No. 1, p. 7. "On July 22, 2015, Mitchell met with Ms. Robicheaux with regard to his 602 appeal. Ms. Robicheaux apologized and acknowledged fault for not providing the Halal diet before Ramadan ended." DDSUF 18.

In response to Plaintiff's Interrogatory No. 10, Defendant, who was the Community Resources Manager during the relevant time period, stated that, "through the supervision of Chaplains, defendant generally coordinates, monitors, and supports all religious programming and monitors the implementation of court-mandated religious services such as the provision of inmate religious dietary needs." (ECF No. 132, pgs. 44–45).

---

[4] Plaintiff does not dispute this fact, but does allege that a diet form was not actually enclosed. (ECF No. 132, pgs. 10–11).
[5] The exact number of Halal meals Plaintiff received during Ramadan is unclear. Taking Defendant's evidence as true, at most, Plaintiff "occasionally" received halal meals during Ramadan. DDSUF 14; ECF No. 130-5, p. 22

ii. *Sincerely Held Religious Belief*

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria. First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to so-called religions which ... are obviously shams and absurdities and whose members are patently devoid of religious sincerity. Second, the claim must be rooted in religious belief, not in purely secular philosophical concerns." Malik, 16 F.3d at 333 (alteration in original) (citations and internal quotation marks omitted); see also Shakur, 514 F.3d at 884–85 (noting the Supreme Court's disapproval of the "centrality" test and finding that the "sincerity" test in Malik determines whether the Free Exercise Clause applies).

Plaintiff has alleged that he is a Muslim inmate, and that his beliefs regarding the Ramadan fast are sincerely held and rooted in religious belief. (ECF No. 128, pgs. 3–4). "[A] muslim must eat meat that is slaughtered in the Name of GOD and or prepared by another Muslim who pronounces the name of God over that Food. In addition, a muslim must fast in the Holy Month of Ramadan. Plaintiff practice of Islam over the years have convinced him that eating halal meat/foods during the 'breakFest' heightens the believers religious experience."[6] (Id. at 4). This allegation is supported by Plaintiff's sworn testimony in the record. "Plaintiff is a Muslim inmate and sincerely with consistency attempts to Follow the tenets of Islam in regards to his religious diet and Fasting during the Holy Month of Ramadan. In Islam we should only eat meat that is slaughtered in the name of AllAH, usually meat obtained from Following the tenets of Islam is pure with less contaminants because of the Feed used believing this in addition to what AllAH mandates in the Holy Quran … a 'religious experience' during the Holy Month of Ramadan is especially sought out."[7] (ECF No. 1, p. 9). It is also supported by Plaintiff's deposition testimony. (ECF No. 130-5, pgs. 6–9).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach, 657 F.3d at 942. It need only draw inferences, however, where

---

[6] Typographical and grammatical errors in original.
[7] Typographical and grammatical errors in original.

there is "evidence in the record … from which a reasonable inference … may be drawn…." Celotex, 477 U.S. at 330 n. 2 (citation omitted).

Defendant did not submit any evidence to dispute the evidence in the record that Plaintiff is a Muslim inmate, and that his beliefs regarding the Ramadan fast are sincerely held and rooted in religious belief. Accordingly, the Court finds that, for purposes of this summary judgment motion, Plaintiff has established that he is a Muslim inmate, and that his beliefs regarding the Ramadan fast are sincerely held and rooted in religious belief.

### iii. *Substantial Burden*

To prevail, Plaintiff must also show that Defendant's actions substantially burdened the practice of his religion. Jones, 791 F.3d at 1031. "A substantial burden ... place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 1031–32 (alterations in original) (citation and internal quotation marks omitted).

"Inmates [] have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." McElyea v. Babbitt, 833 F.2d 196, 198 (9th Cir. 1987). However, this right is balanced against budgetary and administrative concerns of the prison. Ward v. Walsh, 1 F.3d 873, 877 (9th Cir. 1993).

"To ensure that courts afford appropriate deference to prison officials, the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be judged under a reasonableness test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. The challenged conduct is valid if it is reasonably related to legitimate penological interests." Id. at 1032 (citations and internal quotation marks omitted).

Defendant does not dispute that, as the Community Resource Manager, she was at least one of the individuals responsible for providing Plaintiff with access to a religious diet. As summarized above, the undisputed evidence also shows that Plaintiff reached out to Defendant regarding his religious diet, and that Defendant did not respond for approximately three weeks. DSSUF 4; DSSUF 5; ECF No. 130-5, p. 31. When Defendant did respond, she told Plaintiff

that his 3030 diet form could not be located in his C-File, even though it is also undisputed that this was false because Plaintiff's C-File did in fact contain the form.  DDSUF 5; DDSUF 6; ECF No. 132, p. 7.  Finally, it is undisputed that "On July 22, 2015, Mitchell met with Ms. Robicheaux with regard to his 602 appeal.  Ms. Robicheaux apologized and acknowledged fault for not providing the Halal diet before Ramadan ended."  DDSUF 18.

While the exact number of halal meals Plaintiff missed during Ramadan is unclear, even taking Defendant's evidence as true, at most, Plaintiff "occasionally" received halal meals during Ramadan.  DDSUF 14; ECF No. 130-5, p. 22.[8]  According to Plaintiff's deposition testimony (which was submitted by Defendant, and which Defendant did not submit any evidence to rebut), when Plaintiff did not receive the halal diet, he had to eat food that was not compliant with the tenants of his Muslim faith.  (ECF No. 130-5, p. 23).  When asked how this affected his ability to practice his religious, Plaintiff responded "[i]t is a religious experience meaning that Ramadan is a time where we attempt to do things that please God in every way to the best of our ability.  And I believe that the eating of halal food, specifically during the month of Ramadan, gives you a heightened religious experience during the month of Ramadan."  (Id. at 25).

Thus, Plaintiff has established that he had to eat non-halal meals for at least most of Ramadan, which were not compliant with the tenants of his Muslim faith.  This interfered with Plaintiff's religious experience.

While some deference is given to prison officials, there is no evidence in the record that Defendant's conduct was reasonably related to a legitimate penological interest.  Defendant does not dispute that Plaintiff should have received halal meals during Ramadan.  Defendant received a CDCR 22 Form on the issue, yet failed to respond for three weeks, while Ramadan

///

///

///

---

[8] According to the declaration Plaintiff submitted in opposition to Defendant's motion for summary judgment, Plaintiff "may have received one maybe two Halal meals prior to July 16, 2015."  (ECF No. 132, p. 11)

was in process. This delay violated prison policy.[9] Again, it is also undisputed that the approved 3030 diet form was in Plaintiff's C-File at this time.

As the evidence in the record shows that Defendant's actions (or inactions) coerced Plaintiff to act contrary to his religious belief on numerous occasions, and as there is no evidence in the record of a legitimate penological interest in delaying Plaintiff's access to halal meals, Plaintiff has established that Defendant substantially burdened the exercise of his religion.

#### iv. *Defendant's Arguments*

Defendant makes various arguments as to why Plaintiff's motion for summary judgment should be denied and her's should be granted, but, especially in the absence of any declaration or admissible evidence from Defendant as to why she failed to timely respond to Plaintiff's CDCR 22 Form and why her response was not accurate, the Court finds these arguments unpersuasive.

Defendant argues that she is entitled to summary judgment because she followed legitimate prison policy. According to Defendant, "[t]he prison has a legitimate government interest in not providing Plaintiff a religious meal without adequate documentation," and she was following prison policy when she "attempted to confirm that Mitchell was authorized to receive a religious meal." (ECF No. 130, p. 6). However, Plaintiff is not challenging the documentation requirement. Instead, the undisputed record shows that Plaintiff complied with prison documentation policy. Plaintiff had an approved 3030 diet form in his C-File, and timely filed a CDCR 22 Form regarding the issue. In other words, the undisputed facts establish that Plaintiff complied with prison procedures that were in place to ensure he received religious meals during Ramadan, and that he failed to receive these meals due to Defendant's conduct.

Rather than submit a declaration from Defendant, Defendant makes an unsupported

---

[9] "Within three working days after receipt of the form [22], the responding employee shall: (A) Note his or her decision on the form. (B) Sign and date the form. (C) Retain a copy for his or her records. (D) Return the original and remaining copy of the form to the inmate or parolee." Cal. Code Regs. tit. 15, § 3086(f)(4)(A)-(D).

argument that a brief delay in providing a religious diet is not unconstitutional because "[i]t is a common occurrence in everyday life (not just in prisons) for paperwork to be misdirected, misfiled, or lost," and that filling out a form for a second time "is generally nothing more than an annoyance." (Id. at 7). However, there is no evidence that paperwork was in fact misfiled, misdirected, or lost. There is again no explanation given as to why Defendant failed to find the approved 3030 diet form in Plaintiff's C-File, or why it took her three weeks to respond to Plaintiff's CDCR 22 Form. It is true that Defendant wrote in her response to Plaintiff's CDCR 22 Form that "[n]othing could be located in your C-file" (ECF No. 130-5, p. 31), but she does not include a declaration under penalty of perjury that this response was true. Moreover, the undisputed evidence shows that Plaintiff's approved 3030 diet form was exactly where it should have been. Additionally, the almost three-week delay in responding to Plaintiff's CDCR Form 22 violated prison policy. As for Defendant's argument that filling out a form is merely an annoyance, Plaintiff has submitted admissible evidence that missing religious meals during Ramadan, when he had already been approved for such meals, was not a mere annoyance.

Additionally, Plaintiff alleges, under penalty of perjury, that on December 9, 2010, Defendant responded to a 602 Plaintiff filed, granting Plaintiff's request to be placed on the Halal diet. (ECF No. 128, p. 12). In addition to his declaration, Plaintiff submitted a copy of the response to his 602. (Id. at 17). While the events at issue in this case occurred years later, Defendant provided no evidence to suggest that the delay in processing Plaintiff's CDCR 22 Form (in violation of prison policy) was caused by misdirected, misfiled, or lost paperwork. Defendant also provided no evidence to explain why she told Plaintiff that his C-File did not contain an approved 3030 diet form, even though it did.

As to the cases Defendant cites to regarding a delay in processing a religious diet application, these cases have no relevance here because, as discussed above, this is not a case about the processing of Plaintiff's religious diet application, and Plaintiff is not challenging a prison policy. The undisputed evidence in this case shows that Defendant failed to provide Plaintiff with a religious diet during Ramadan, even though Plaintiff had an approved 3030 diet

form in his C-File. Not providing a religious diet during Ramadan can violate an inmate's religious rights. See, e.g., Washington v. Brown, 2009 WL 160311, at *18–19 (E.D. Cal. Jan. 21, 2009), report and recommendation adopted, 2009 WL 532615 (E.D. Cal. Mar. 3, 2009) (denying summary judgment to certain defendants on the plaintiff's First Amendment free exercise claims where there was a genuine dispute of material fact as to whether those defendants were at least partially responsible for delaying the plaintiff's participation in the Ramadan fast); Tamayo v. Fisher, 2015 WL 1829504, at *3–4 (E.D. Cal. Apr. 9, 2015), report and recommendation adopted, 2015 WL 3562873 (E.D. Cal. May 28, 2015) (allowing a First Amendment free exercise claim to proceed past screening where the plaintiff alleged that certain defendants ignored his request to be placed on the list for Ramadan meals, "which prevented him from receiving Ramadan meals in 2010").

Next, Defendant argues that mere negligence does not give rise to a constitutional violation, and cites to a Ninth Circuit concurrence, an out of circuit case, and district court cases. However, Defendant's assertion of negligence is unsupported by any evidence. The undisputed evidence discussed above is sufficient to establish that Defendant acted intentionally, or at least arbitrarily or capriciously. See Hayes v. Idaho Corr. Ctr., 849 F.3d 1204, 1211 (9th Cir. 2017) (holding that "'[t]wo or three pieces of [legal] mail opened in an arbitrary or capricious way suffice to state a [First Amendment] claim'") (first alteration in original) (quoting Merriweather v. Zamora, 569 F.3d 307, 318 (6th Cir. 2009)).

Finally, Defendant argues that she is entitled to qualified immunity because: 1) "[a] short delay in approval of a religious diet request does not constitute a constitutional violation"; 2) "[m]ere negligence does not support a claim under § 1983"; and 3) Defendant "reasonably understood that the prison had a legitimate interest in requiring Mitchell to provide proper documentation for his religious diet request…." (ECF No. 130, p. 8). These arguments fail for the reasons discussed above. This is not a case about the processing of Plaintiff's religious diet application, and Plaintiff's evidence shows more than mere negligence.

In her opposition to Plaintiff's motion for summary judgment, Defendant argues that Plaintiff's motion is procedurally defective. Defendant is correct that Plaintiff failed to strictly

comply with Federal Rule of Civil Procedure 56(c)(1)(A), as well as Local Rule 260. While Plaintiff included evidence with his motion, he failed to cite to particular parts of materials in the record when listing undisputed facts. However, the Ninth Circuit has "held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). Additionally, there is evidence in the record supporting Plaintiff's motion, and the Court "may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Moreover, Defendant herself failed to strictly comply with Local Rule 260 in her response to Plaintiff's statement of undisputed facts, as Defendant does not cite to any evidence in her response to Plaintiff's statement of undisputed facts. (See ECF No. 133-1, pgs. 1–4). Accordingly, the Court will not deny Plaintiff's motion simply because Plaintiff failed to strictly comply with Federal Rule of Civil Procedure 56(c)(1)(A) and Local Rule 260.

Finally, Defendant argues that Plaintiff's motion is not supported by admissible evidence,[10] and that Plaintiff failed to meet his burden of proof. However, these arguments fail for the reasons discussed above.

As Plaintiff has established that: 1) he is a Muslim inmate; 2) his beliefs regarding the Ramadan fast are sincerely held and rooted in religious belief; and 3) Defendant substantially burdened those beliefs, the Court will recommend that Plaintiff's motion for summary judgment be granted and that Defendant's motion for summary judgment be denied.

## III.     PLAINTIFF'S MOTIONS TO SUPPLEMENT

Plaintiff filed two motions for leave to submit a supplemental civil complaint pursuant to Federal Rule of Civil Procedure 15(d), along with copies of the proposed supplemental pleadings. (ECF Nos. 112, 113, 146 & 148). The Court will recommend that both of these motions be denied.

---

[10] The Court reiterates that it is Defendant who failed to support her positions with evidence. Defendant submitted no evidence in opposition to Plaintiff's motion for summary judgment, and in her own motion, included only: 1) portions of the transcript of Plaintiff's deposition (ECF No. 130-5, pgs. 1-29); 2) a copy of a letter Plaintiff sent to Warden Davey, which is dated June 11, 2015 (id. at 30); and 3) a copy of the CDCR 22 Form Plaintiff sent to Defendant on June 16, 2015 (id. at 31)

As Defendant points out, in denying Plaintiff's request for joinder, to which Plaintiff attached what appeared to be a supplemental complaint, the Court warned Plaintiff that, "'[u]nless prior approval to the contrary is obtained from the Court, every pleading to which an amendment or supplement is permitted as a matter of right or has been allowed by court order shall be retyped and filed so that it is complete in itself without reference to the prior or superseded pleading. No pleading shall be deemed amended or supplemented until this Rule has been complied with.'" (ECF No. 80, p. 2) (quoting Local Rule 220). Despite this warning, neither proposed supplement is complete in itself. Accordingly, Plaintiff's motions should be denied.

Even were the Court to ignore this defect, Plaintiff's motions would be denied. The latest occurrence alleged in Plaintiff's first proposed supplement occurred on January 13, 2016. (ECF No. 113, p. 7). Plaintiff filed the complaint commencing this action on August 5, 2016. As the incidents alleged in the supplement occurred prior to the commencement of this case, Plaintiff's first motion to submit a supplemental complaint should be denied. Fed. R. Civ. P. 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened *after the date of the pleading to be supplemented*.") (emphasis added).[11]

As to the second motion to submit a supplemental complaint, the incidents did occur after the date the complaint was filed. However, Plaintiff is attempting to add claims against seven defendants (none of which are currently defendants in this case), based on incidents that occurred years after the incidents alleged in Plaintiff's complaint and at a different prison. For example, Plaintiff alleges that in October of 2019, while he was incarcerated at Kern Valley State Prison, Dr. Wang refused to appropriately treat his swollen ankle, and then removed Plaintiff's ankle support and other DME appliances needed to support his ankle from his list of chronos. Plaintiff alleges that this violated his Eighth Amendment rights. Plaintiff also alleges

---

[11] In this motion Plaintiff also requests a modification of the schedule while his new claims are processed. (ECF No. 112, pgs. 5-6). As the Court is recommending that this motion be denied, the Court will recommend that this request be denied as well.

that in November of 2019 T. Rodriguez violated his First Amendment rights by retaliating against him for filing a grievance by failing to give him his religious chain/medallion.

There is no allegation that Defendant was involved in these incidents in any way. As Plaintiff is attempting to add separate, distinct, and new causes of action, this motion should be denied as well. Planned Parenthood of S. Arizona v. Neely, 130 F.3d 400, 402 (9th Cir. 1997) ("While leave to permit supplemental pleading is favored, it cannot be used to introduce a separate, distinct and new cause of action.") (citations and internal quotation marks omitted).

Additionally, both of Plaintiff's motions should be denied because granting them would violate the purpose of Rule 15(d). Rule 15(d) is meant to avoid the costs, delays, and waste associated with separate actions. Keith v. Volpe, 858 F.2d 467, 473 (9th Cir. 1988); see also Planned Parenthood of S. Arizona, 130 F.3d at 402 ("judicial efficiency" is the "the goal of Rule15(d)"). Here, allowing either supplement would create delays and hinder judicial efficiency. This case, which was filed in 2016, is nearing its end. However, if the Court were to grant either motion to supplement, the case would essentially restart. The new defendants would need to be served, discovery would have to be reopened so that the parties could conduct discovery regarding the new claims, and the new parties would have an opportunity to file dispositive motions on the claims. Thus, both of Plaintiff's motions to supplement should be denied for this reason as well.

The Court notes that it is not making any recommendations on the merits of the claims, and that nothing in these findings and recommendations prevents Plaintiff from filing separate action(s) based on the allegations in his proposed supplements.

## IV.     MISCELLANEOUS MOTIONS

Also pending are: 1) Plaintiff's motion for a stay of proceedings/injunctive order (ECF No. 135); 2) Plaintiff's motion under the All Writs Act (ECF No. 136); 3) Plaintiff's motion for court order and/or intervention (ECF No. 141); 4) Plaintiff's motion for a preliminary injunction/TRO (ECF No. 143); and 5) Plaintiff's motion for a temporary restraining order and preliminary injunction (ECF No. 147).

For the reasons that follow, the Court will recommend that all of these motions be

denied.

a. <u>Legal Standards</u>

A federal district court may issue emergency injunctive relief only if it has personal jurisdiction over the parties and subject matter jurisdiction over the lawsuit. <u>See</u> <u>Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 350 (1999) (noting that one "becomes a party officially, and is required to take action in that capacity, only upon service of summons or other authority-asserting measure stating the time within which the party served must appear to defend."). The court may not attempt to determine the rights of persons not before it. <u>See, e.g., Hitchman Coal & Coke Co. v. Mitchell</u>, 245 U.S. 229, 234-35 (1916); <u>Zepeda v. INS</u>, 753 F.2d 719, 727-28 (9th Cir. 1983); <u>see also</u> <u>Califano v. Yamasaki</u>, 442 U.S. 682, 702 (1979) (injunctive relief must be "narrowly tailored to give only the relief to which plaintiffs are entitled"). Under Federal Rule of Civil Procedure 65(d)(2), an injunction binds only "the parties to the action," their "officers, agents, servants, employees, and attorneys," and "other persons who are in active concert or participation." Fed. R. Civ. P. 65(d)(2)(A)-(C). "When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." <u>Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.</u>, 810 F.3d 631, 633 (9th Cir. 2015).

Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find that the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal Right, and is the least intrusive means necessary to correct the violation of the Federal Right." On the merits, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." <u>Glossip v. Gross</u>, 135 S. Ct. 2726, 2736-37 (2015) (quoting <u>Winter v. Natural Res. Def. Council, Inc.</u>, 555 U.S. 7, 20 (2008)). "Under <i>Winter</i>, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction."

Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

Under the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice." United States v. New York Tel. Co., 434 U.S. 159, 174 (1977) (footnote and citations omitted).

"Thus, use of the All Writs Act is appropriate in prisoner civil rights cases where non-party correctional officials are impeding the prisoner-plaintiff's ability to litigate his pending action." Hammler v. Haas, 2019 U.S. Dist. LEXIS 48377, *3-4. See also Mitchell v. Haviland, 2015 U.S. Dist. LEXIS 109106, *5 ("Use of the All Writs Act is appropriate in cases where prison officials, not named as defendants, allegedly have taken action that impedes a prisoner's ability to litigate his case"); Lopez v. Cook, 2014 U.S. Dist. LEXIS 52198, 2014 WL 1488518 (issuing an order under the All Writs Act requiring prison officials to provide Plaintiff, who was in the Segregated Housing Unit for non-disciplinary reasons, with two contact visits with his counsel. However, "injunctive relief under the All Writs Act is to be used sparingly and only in the most critical and exigent circumstances," and only "if the legal rights at issue are indisputably clear." Brown v. Gilmore, 533 U.S. 1301, 1303 (2001) (citations and internal quotation marks omitted).

### b. Plaintiff's Motions

In Plaintiff's motion for a stay of proceedings/injunctive order (ECF No. 135), Plaintiff alleges that he is being held in Administrative Segregation at R.J. Donovan Correctional Facility, and that all his legal and personal property is being withheld. Plaintiff asks for a stay of the proceedings. He also makes numerous requests for injunctive relief under the All Writs Act, including a request that his legal documents be inventoried and/or returned to him.

In Plaintiff's motion under the All Writs Act (ECF No. 136), which was filed in the same week as Plaintiff's motion for a stay of proceedings/injunctive order, Plaintiff makes

numerous allegations that have no relation to the claim proceeding in this case. Plaintiff also alleges that he is being denied access to his legal property and the law library, and asks for a Court order directing the Warden at R.J. Donovan Correctional Facility to order his employees to return his legal property.

In Plaintiff's motion for court order and/or intervention (ECF No. 141), Plaintiff alleges that he does not have access to his property, and asks for a Court order directing the Warden at Kern Valley State Prison to give him access to all the property he is allowed to possess.

In Plaintiff's motion for a preliminary injunction/TRO (ECF No. 143), Plaintiff makes numerous allegations that have no relation to the claim proceeding in this case. Plaintiff also alleges that he was eventually given "what was left of his legal property," (Id. at 2), and asks for an injunction preventing certain prison officials (and people acting in concert with them) from discarding, disposing of, or confiscating his legal property without authorization from a United States district court judge or magistrate judge.

In Plaintiff's motion for a temporary restraining order and preliminary injunction (ECF No. 147), Plaintiff makes numerous allegations that have no relation to the claim proceeding in this case.

  c. <u>Analysis</u>

Plaintiff largely seeks injunctive relief against non-defendants, and the acts alleged in all of the motions occurred at different institutions than the acts alleged in the complaint. Additionally, none of the requests have anything to do with the claim proceeding in this action.[12] Thus, these requests for injunctive relief should be denied.[13]

Plaintiff does make allegations that he is being denied access to his legal property and the law library, which he alleges is interfering with his ability to prosecute this case. The Court takes these allegations seriously. However, based on Plaintiff's filings, after he was transferred to Kern Valley State Prison, he was eventually given "what was left of his legal property."

---

[12] For example, Plaintiff seeks an order preventing him from being transferred, directing officials to return religious artifacts, and directing officials to place him on single cell status.

[13] If Plaintiff believes his civil rights are being violated, he may file a separate action and request injunctive relief in that action.

(ECF No. 143, p. 2). Additionally, in the motions filed after he was transferred, Plaintiff makes no further allegations of lack of law library access. Thus, injunctive relief under the All Writs Act is not appropriate at this time. <u>Brown v. Gilmore</u>, 533 U.S. at 1303 ("[I]njunctive relief under the All Writs Act is to be used sparingly and only in the most critical and exigent circumstances.") (citation and internal quotation marks omitted).

However, Plaintiff does identify particular items of legal property that were not returned to him, and that he believes he needs to prosecute this case. (ECF No. 142, pgs. 1-2). Plaintiff alleges that he needs the defense's responses to his discovery requests, in particular "Interrogatories Responses For set one and two including in Supplemental Reponses and the request for Admissions Set one and two."[14] (<u>Id.</u>). Instead of recommending that injunctive relief under the All Writs Act be granted, as copies of these documents are likely in the possession of Defendant, in order to facilitate the expeditious resolution of this case the Court will direct Defendant to serve Plaintiff with a copy of these documents.

As to Plaintiff's request for a stay due to his inability to access his legal property, this request appears to be moot. As discussed above, Plaintiff was given access to what was left of his legal property, and the Court will order Defendant to provide Plaintiff with copies of certain documents that were not returned to him. The Court notes that if there is any particular deadline Plaintiff is unable to meet, he should file a request for an extension of that deadline.

Accordingly, that Court will recommend that the following motions to be denied: 1) Plaintiff's motion for a stay of proceedings/injunctive order (ECF No. 135); 2) Plaintiff's motion under the All Writs Act (ECF No. 136); 3) Plaintiff's motion for court order and/or intervention (ECF No. 141); 4) Plaintiff's motion for a preliminary injunction/TRO (ECF No. 143); and 5) Plaintiff's motion for a temporary restraining order and preliminary injunction (ECF No. 147).

///
///

---

[14] Typographical and grammatical errors in original.

## V. RECOMMENDATIONS

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 128) be GRANTED, with the amount of damages to be determined at trial.

2. The parties be ordered to confer about damages and to submit a status report fourteen days after the district judge rules on these findings and recommendations.

3. Defendant's motion for summary judgment (ECF No. 130) be DENIED.

4. Plaintiff's request for a modification of the schedule (ECF No. 112, pgs. 5-6) be DENIED.

5. Plaintiff's motions for leave to submit a supplemental civil complaint pursuant to Federal Rule of Civil Procedure 15(d) (ECF Nos. 112 & 148) be DENIED.

6. The following motions be DENIED:

   a. Plaintiff's motion for a stay of proceedings/injunctive order (ECF No. 135).

   b. Plaintiff's motion under the All Writs Act (ECF No. 136).

   c. Plaintiff's motion for court order and/or intervention (ECF No. 141).

   d. Plaintiff's motion for a preliminary injunction/TRO (ECF No. 143).

   e. Plaintiff's motion for a temporary restraining order and preliminary injunction (ECF No. 147).

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan,

923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that:

1. Defendant's request for ruling on motion for summary judgment (ECF No. 149) is DENIED as moot.

2. Within fourteen days of the date of service of this order, Defendant shall serve Plaintiff with copies of her responses to Plaintiff's discovery requests, in particular a copy of "Interrogatories Responses For set one and two including in Supplemental Reponses and the request for Admissions Set one and two."[15] (ECF No. 142, pgs. 1-2).

IT IS SO ORDERED.

Dated: __**March 27, 2020**__                    /s/ *Erica P. Grosjean*
                                         UNITED STATES MAGISTRATE JUDGE

---

[15] Typographical and grammatical errors in original.